UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                                    CASE NO.  6:20-cr-86-RBD-EJK

JUSTINA MARIA HOLLAND

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by Karin Hoppmann, Acting United States Attorney for the Middle District of Florida, hereby files this sentencing memorandum for purposes of providing the Court with context of what is at issue as it relates to loss amount and restitution at sentencing for the defendant.

On December 17, 2020 the defendant plead to all counts as charged in the indictment. Doc. 1. The Court has set this matter for sentencing on Monday July 12, 2021. Doc. 57. At sentencing, the Government intends to prove that the defendant, as result, of her actions for which she has plead guilty to, caused a total loss amount of $1,128,350.50. This is an adjusted loss amount from the initial PSR. (PSR ¶ 53).  As indicated in the table below (TABLE A), there are several categories of loss that the Court will have to consider determining loss amount and restitution:

## TABLE A

|  | Category | Total | Subtotal | No Objection Expected[1] | Objection Expected |
|---|---|---|---|---|---|
| **A** | **Unauthorized Salary Payments** | $140,522.20 | | $110,522.20 | $30,000+ |
| **B** | **Unauthorized Transfers From IRA Account** | $59,301.89 | | $59,301.89 | No |
| **C** | **Diverted Checks from Victim and Property Rental Business** | $94,659.10 | | $94,659.10 | No |
| **D** | **Outstanding Rental and Unauthorized Utility Payments** | $41,308.85 | | $30,408.85 | $10,900 |
| **E** | **Fraudulent Car Payments** | $28,549.35 | | $28,549.35 | No |
| **F** | **Credit Card Fraud** | $740,955.08 | | | |
| **F.1** | **American Express** | | $434,871.56 | $132,176.88 | $302,694.68 |
| **F.2** | **J.P. Morgan Chase** | | $196,578.60 | $196,578.60 | No |
| **F.3** | **BB&T** | | $81,033.75 | $81,033.75 | No |
| **F.4** | **Capital One** | | $16,491.96 | $16,491.96 | No |
| **F.5** | **Discover** | | $7,835.58 | $7,835.58 | No |
| **F.6** | **Staples** | | $4,143.63 | $4,143.63 | No |
| **G** | **SNAP Benefit Fraud** | $23,054.03 | | $23,054.03 | No |
| | **TOTAL** | $1,128,350.50 | | $784,755.82 | $343,594,68 |

---

[1] The defendant has objected to the loss amount in the case being above $1 million and, specifically as to the credit card loss, of being above $700,000. As detailed below, the United States will be introducing testimony and exhibits at sentencing to prove the entire loss and restitution amounts in this case. Items in this column reflect those portions of the actual loss and restitution for which the defendant has not asserted a specific objection as to the amount of loss for this category. Items in the "Objection Expected" column reflect those portions of the actual loss and restitution for which the defendant has asserted a specific objection. The phrases "No Objection Expected" and "Objection Expected" are not intended to suggest that the defendant will be waiving its objection to the total loss. Rather, the purpose of the two columns is to differentiate the loss between those items where the defendant is expected to present a contrary position (as opposed to objecting generally and putting the Government to its burden of proof).

If this chart is correct, then it appears that the defendant does not have any specific objections to approximately $784,755.82 of actual loss. As a result, it is not expected that the defendant's specific objections will have any impact on the sentencing guidelines, because the amount of loss will be above $550,000.[2]

As derived from the categories of loss as listed in in Table A, the Government at sentencing will ask the Court to enter orders of restitution as seen in Table B.

**TABLE B**

| Johnson Properties | $629,073.49 |
|---|---|
| Western Surety Company | $100,000 |
| American Express | $357,578.68 |
| The Department of Children and Families | $23,054.03 |

### Categories of Loss

**A.    Unauthorized Salary Payments**

The Government submits that the defendant during the course of her employment with the victim's rental property business received unauthorized salary payments that totaled approximately $140,522.20. This is an adjusted

---

[2] In the defendant's objections to the summary of loss contained in paragraph 53 of the initial PSR, the defendant states that the total amount of loss should be adjusted to approximately $836,000.

3

loss amount from the amount contained in the initial PSR at paragraphs 40 and 53. The methods and means used to reach this conclusion encompassed interviews with the victim, a review of QuickBooks Intuit Payroll Records from the victim's real property company, and a review of the defendant's bank accounts, which included all checks made payable to the defendant as part of her employment. The Government intends to call investigator Christine Buehler, who is a certified fraud examiner who would testify as to the manner and means by which the Government came to this loss amount. The Government has attached Government Exhibit 1, which is a summary chart created by Ms. Buehler for this category of loss amount. The loss number, however, is in dispute since the defendant objects to paragraph 35 of the initial PSR. The defendant alleges that the loss amount does not account for an alleged $30,000 or more in extra earned income the defendant was entitled to receive.

### B.    Unauthorized Transfers From IRA Account

As another category of loss, the Government submits that there were $59,301.89 in unauthorized transfers, which occurred from an IRA account entitled "Nuview." To arrive at this loss amount, the Government plans to elicit testimony from Ms. Buheler. She would testify that she reviewed distribution of checks made payable to the defendant and wires issued from the IRA to the defendant. The witness would also attest that she reviewed the defendant's bank

4

accounts, whereupon said checks and wires were deposited into the defendant's personal bank accounts. The Government has attached Government Exhibit 2, which is a summary chart of the loss amount created by Ms. Buehler. There does not appear to be an objection to this category of loss by the defendant in the objections to the initial PSR.

### C. Checks Diverted from Victim and the Property Rental Business

The Government submits as another category of loss, that the defendant diverted $94,659.10 in checks that were made payable to the victim and/or his property rental business by depositing the checks directly into the defendant's own personal bank accounts. This is an adjusted loss amount from the amount in the initial PSR at paragraphs 42 and 53. The methods used to reach this conclusion, included interviews with the victim, a review of the personal bank accounts of the defendant, and checks payable to either the property rental business or the Nuview IRA account. I anticipate Ms. Buheler to attest to these investigative methods. The Government would rely again upon Government Exhibit 1, which is a summary chart of the loss that includes this amount therein and was created by Ms. Buehler.  There does not appear to be an objection to this category of loss by the defendant in the objections to the initial PSR.

### D. Rental Payments and Unauthorized Utility Payments

5

The Government submits as another category of loss, $41,308.85, which consists of unpaid rent by the defendant and unauthorized payments for utilities of rental property. The breakdown of this loss would be $34,700 of outstanding rent and utility payments in amounts of $3,187.93 and $3,420.92. This is an adjusted loss amount from the amount in the initial PSR at paragraphs 43 and 53. The manner and means by which the Government reached this loss amount, included interviews of the victim, a review of the rental lease agreement for 1056 Gwyn Circle, which was the property rented by the defendant, a review of Duke Energy payment records, and a review of the victim's bank records and the victim's real property business records for receipt of rental income. We anticipate Ms. Buehler to attest to the manner and means by which the Government came to this loss amount. Attached is Government Exhibit 3, which contains a summary chart of loss as well as copies of Duke Energy records, and the lease agreement for 1056 Gwyn Circle.  The amount owed on this loss category is in dispute as it relates to outstanding rental income only. The defendant submits that the loss amount for rental income is $23,800. It does not appear the defendant has objected to the initial PSR as to the $3,187.93 and $3,420.92 in utility payments. [3]

---

[3] In the defendant's objections as to the loss amount for rental payments and unauthorized utility payments, the defendant has provided two values of loss: $23,800 and alternatively $35,000. The Government has utilized the $23,800 loss amount as it relates to rental payments for purpose of calculation of an expected objection.

### E.   Fraudulent Car Payments

The Government submits another category of loss of $28,549.35 that resulted from payments from accounts belonging to the victim and his property rental business for two vehicles the defendant owned. The manner and means from which this loss amount was determined, included a review of Car Max records for each vehicle, a review of the victim's property rental business bank records, bank records of the defendant, and payment history of the two vehicles' financing companies records. We anticipate Ms. Buehler to attest to the manner and means by which the Government came to this loss amount. Attached as Government Exhibit 4 is a summary chart for this category of loss. There does not appear to be an objection to this category of loss by the defendant in the initial PSR.

### F.   Credit Card Fraud

The Government would submit that the defendant engaged in a scheme of credit card and wire fraud involving the victim and his property rental business, which resulted in another category of loss that totals $740,955.08. The credit card accounts in question that encompass this loss category are included in Table C below.

## TABLE C

| 1 | American Express Account | $434,871.56 |
|---|---|---|
| 2 | J.P. Morgan Chase Disney credit card | $196,578.60 |
| 3 | BB&T Visa Card for the Property Rental Business | $81,033.75 |
| 4 | Defendant's Capital One credit card | $16,491.96 |
| 5 | Defendant's Discover Card | $7,835.58 |
| 6 | Victim's Property Rental Business's Staples Account | $4,143.63 |
|  | **TOTAL:** | $740,955.08 |

### 1.     **American Express:**

The Government submits that the defendant made $434,871.56 in unauthorized American Express charges. This is an adjusted loss amount from the loss amount indicated in the initial PSR at paragraph 53, which stated $451,851.03. The manner and means from which this loss amount was determined included interviews with the victim and his girlfriend, the victim's own review of charges on the American Express account, the victim's girlfriend's review of charges on the American Express account, subpoenaing American Express records, a review by Ms. Buehler and FBI Special Agent Medico of the records obtained from American Express, the creation of a spreadsheet to isolate charges the victim denies making, and confirmation with the victim and American Express as to a reimbursement of funds to the victim. We would anticipate Ms. Buehler to testify as the manner and means of how the Government arrived at this loss number. To support the loss amount, the Government has attached Government Exhibit 5, which is a summary of credits

posted to the American Express account of the victim. The Government has also attached Government Exhibit 6 which was obtained from American Express and is a summary of reimbursements made by American Express to the victim's account. The Government has also attached Government Exhibit 7 which is a summary chart of PayPal transactions made using the American Express account that were cross referenced to a PayPal account in the name of the defendant. The Government has also submitted to the Court, Government Exhibit 8, which is a summary of American Express charges that the defendant has admitted to in her objections to the initial PSR. The Government has also submitted to the Court, Government Exhibit 9, which is a CD, which contains a color-coded spreadsheet. The spreadsheet includes the American Express charges that the victim and his girlfriend stated were not made by them and/or fraudulent on the American Express account. Items highlighted in green are fraudulent charges the defendant has admitted to in her objections to the initial PSR, which total $132,176.88. These admissions were provided by the defendant as a part of her objections to the loss amount contained in the initial PSR at paragraph 53. Items highlighted in red are transactions the victim has reassessed as non-fraudulent charges. The remaining charges displayed in white are fraudulent.  This results in a disputed amount of $302,694.68.

## 2.    JP Morgan Chase Disney VISA

The Government would submit that another source of credit card loss occurred when the defendant opened a line of credit with JP Morgan Chase, from which $196,578.60 in unauthorized charges were made and paid for by using accounts belonging to the victim and/or his property rental business. The manner and means by which this loss amount was derived, includes an interview of the victim, a credit check by the victim, subpoenaing of JP Morgan Chase Disney Bank Records, and subpoenaing the corresponding bank records that were used to pay the balance owed on the Disney Chase Visa Card. Ms. Buehler would testify as to the manner and means by which the loss number was derived.  The Government has attached a summary chart created by Ms. Buehler as Government Exhibit 10 for this loss amount. Upon a review of the objections made by the defendant to the initial PSR, there appears to be no direct objection to this loss amount. However, there is an objection to the overall total loss amount for credit losses as stated in paragraph 51 of the initial PSR, as well as an objection to paragraph 39, which states the loss amount of this case exceeds $1 million.  Therefore, the Government plans to elicit testimony at sentencing to the manner and means of how this loss amount was determined.

### 3.    **BB&T Visa**

The Government submits as a part of the losses associated with credit card fraud, that the defendant caused a loss of $81,033.75 in unauthorized charges to the victim's property rental business BB&T Visa Card ending in 1696. The methods and means by which this loss amount was determined includes a review of BB&T Credit Card Records of the victim and subpoenaed records from Disney, and the victim's confirmation of fraudulent charges. We expect Ms. Buehler would testify to the manner and means of how this loss amount was rendered. Attached as Government Exhibit 11 is a summary chart spreadsheet to illustrate the $81,033.75 in losses. Upon a review of the objections to the initial PSR, there appears to be no objection to this loss amount. However, there is an objection to the overall total loss amount for credit losses as stated in paragraph 51 of the initial PSR, as well as an objection to paragraph 39, which states the loss amount of this case exceeds $1 million. Therefore, the Government expects to elicit testimony at sentencing as to the manner and means of how this loss amount was determined.

### 4.    **Capital One**

The Government alleges as a part of the losses associated with the credit card fraud that a loss amount of $16,491.96 occurred to the victim and his property rental business when the defendant made payments to a Capital One

credit card. The Government intends to call Ms. Buehler to testify as to the manner and means by which the Government came to this loss amount. The witness is expected to attest to reviewing bank accounts of the victim and his property rental businesses, whereupon payments were revealed to have been made to the defendant's Capital One card account. Ms. Buehler would also testify to having subpoenaed Capital One account records and verified it was the defendant's account where $16,491.96 was paid to. The Government has attached a summary chart created by Ms. Buheler, Government Exhibit 12, to support this loss. Upon a review of the objections to the initial PSR, there appears to be no objection to this loss amount. However, there is an objection to the overall total loss amount for credit losses as stated in paragraph 51 of the initial PSR, as well as an objection to paragraph 39, which states the loss amount of this case exceeds $1 million. Therefore, the Government expects to elicit testimony at sentencing as to the manner and means of how this loss amount was determined.

### 5.    Discover Card

The Government alleges as a part of the losses associated with the credit card fraud by the defendant, that the defendant caused $7,835.58 in losses to victim and his property rental business by making without authorization or consent payments to a Discover card. The methods and means used to reach

12

this loss amount, includes speaking with the victim, a review of bank accounts of the victim and his real property business, and subpoenaing Discover Card records. We would expect Ms. Buehler to attest to the manner and means to derive this loss amount. Attached as Government Exhibit 13 is a summary chart for this category of loss. Upon a review of the objections to the initial PSR, there appears to be no objection to this loss amount. However, there is an objection to the overall total loss amount for credit losses as stated in the in paragraph 51 of the initial PSR, as well as an objection to paragraph 39, which states the loss amount of this case exceeds $1 million. Therefore, the Government expects to elicit testimony at sentencing as to the manner and means of how this loss amount was determined.

**6.      The Property Rental Business's Staples Account Fraud**

The Government alleges as a part of the losses associated with the credit card fraud by the defendant, that the defendant caused $4,143.63 in losses to victim's property rental business by making without authorization or consent charges to the property rental business's Staples customer account. The methods used to reach this loss amount, includes speaking with the victim and subpoenaing of victims' property rental business Staples account. We would expect Ms. Buehler to attest to manner and means to derive this loss amount. Attached as Government Exhibit 14 is a summary chart for this category of loss.

Upon a review of the objections to the initial PSR, there appears to be no objection to this loss amount. However, there is an objection to the overall total loss amount for credit losses as stated in paragraph 51 of the initial PSR, as well as an objection to paragraph 39, which states the loss amount in this case exceeds $1 million. Therefore, the Government expects to elicit testimony at sentencing to the manner and means of how this loss amount was determined.

### G. SNAP Benefit Fraud

As a final category of loss, the Government submits the defendant received a total of $23,054.00 in SNAP benefits to which she was not legally entitled. Upon a review of the objections to the initial PSR, there appears to be no objection to this loss amount.

### II. Contested Restitution for Western Surety Company

The Government as stated in this memorandum, has outlined all categories of loss for this case to the Court. As such, the Government will seek the issuance of several criminal orders of restitution as indicated in Table B. One such criminal order of restitution the Government will seek is for $100,000 to be paid to the Western Surety Company. The Government would expect the victim and or his girlfriend to testify that the victim had previously obtained a $100,000 dishonesty bond with the Western Surety Company. Attached as a composite is Government Exhibit 15, which includes the bond agreement with

14

Western Surety Company, verification of satisfaction by Western Surety Company for proof of loss, and proof of payment for $100,000 to the victim. It is expected that either the victim or his girlfriend would attest to the existence of the bond policy, the basis for filling a claim with the Western Surety Company, and receipt of funds from the Western Surety Company. The defendant has objected to the inclusion of Western Surety Company as a victim for purposes of receipt of restitution.

The Government will reserve argument as to its recommended sentence at sentencing.

Respectfully submitted,

KARIN HOPPMANN
United States Attorney

By:  */s/ Terry B. Livanos*
TERRY B. LIVANOS
Assistant United States Attorney
Florida Bar No. 86092
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:  (407) 648-7500
Facsimile:  (407) 648-7643
E-mail:  Terry.livanos@usdoj.gov

15

**U.S. v. Justina Holland**                    **Case No. 6:20-cr-86-RBD-EJK**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 2, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Ali Kamalzadeh, Esq.

/s/ *Terry B. Livanos*
TERRY B. LIVANOS
Assistant United States Attorney
Florida Bar No. 86092
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:   (407) 648-7500
Facsimile:   (407) 648-7643
E-mail:   Terry.livanos@usdoj.gov

16